UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROGER DOWN *ET AL.*                 *
                                    *
                                    *
Plaintiffs,                         *          CIVIL ACTION NO.
                                    *
                                    *          SECTION:
VERSUS                              *
                                    *          MAGISTRATE JUDGE:
ROBERT RAY HOLCOMB *ET AL.*         *
                                    *          **JURY TRIAL DEMANDED**
Defendants.                         *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * *   *

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Roger Down, Elizabeth Robinson, the RHL Down Superannuation Fund, the Tukibek Superannuation Fund, and Timtash Pty Ltd. ("Plaintiffs"), by and through undersigned counsel, hereby sue Defendants Robert Ray Holcomb, Ellen Holcomb, Holcomb Power, LLC, and Holcomb Energy Systems, LLC ("Defendants"), as follows:

## OVERVIEW

Plaintiffs are the victims of Defendants' years-long daring swindle that dangled in front of investors the prospect of getting in on the ground floor of a breakthrough, revolutionary energy technology that was supposedly proven in

1

concept and always just on the cusp of commercial realization. Defendants strung along the Plaintiffs with numerous misrepresentations that resulted in Plaintiffs suffering significant monetary damages that they now seek to recover. Defendants deployed their scheme through a convoluted business structure involving various companies organized in various countries, which they used to induce Plaintiffs to give money to them in the form of investment proceeds, short-term loans, and unreimbursed expenses. Defendants' continual stream of false statements about the efficacy of inventions that supposedly reduced energy costs *in every application where energy is required* and about the actual and intended uses of the money that they received from Plaintiffs form the basis for this Complaint. In sum, Plaintiffs seek to have Defendants held to account for their failure to honor their obligations to Plaintiffs and for their outright fraud and theft of Plaintiffs' money.

## **PARTIES**

1.  Plaintiff Roger Down is a citizen of Australia. Mr. Down is named as a plaintiff individually and as representative of the RHL Down Superannuation Fund, which is an Australian superannuation fund.

2.  Plaintiff Elizabeth Robinson is a citizen of Australia. Ms. Robinson is named as a plaintiff individually and as representative of the Tukibek Superannuation Fund, which is an Australian superannuation fund. Ms. Robinson and Mr. Down are husband and wife.

2

3. Plaintiff Timtash Pty. Ltd. ("Timtash") is a limited company incorporated under the laws of Australia that is owned entirely by Mr. Down.

4. Defendant Robert Ray Holcomb is, on information and belief, an individual domiciled in Sarasota, Florida.   Mr. Holcomb is the co-founder and manager of Defendants Holcomb Power, LLC and Holcomb Energy Systems, LLC.

5. Defendant Ellen Sue Holcomb is, on information and belief, an individual domiciled in Sarasota, Florida.   Mrs. Holcomb is the co-founder and manager of Defendants Holcomb Power, LLC and Holcomb Energy Systems, LLC. She is married to Mr. Holcomb.

6. Defendant Holcomb Power, LLC was a limited liability company organized under the laws of Delaware.  Robert Holcomb and Ellen Holcomb have recently claimed, however, that Holcomb Power, LLC was re-domesticated to the Country of Belize.  On information and belief, the managing member of Holcomb Power, LLC is Holcomb Scientific Research, Ltd., which is a limited company organized under the laws of Ireland and which is owned entirely by Robert Holcomb and Ellen Holcomb (together, the "Holcombs").  Holcomb Power, LLC maintains its principal place of business in Sarasota, Florida.

7. Defendant Holcomb Energy Systems, LLC is a limited liability company organized under the laws of Delaware.   On information and belief, Holcomb

3

Energy Systems, LLC is owned entirely by the Holcombs.  Holcomb Energy Systems, LLC maintains its principal place of business in Sarasota, Florida.

8.  Non-party Holcomb Scientific Research, Ltd. is, on information and belief, an Irish limited company, and the owner of the supposed inventions at issue and certain patents relating to those inventions.

### JURISDICTION & VENUE

9.  This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 and the principles of supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

10. The matter in controversy is between citizens of the State of Florida and citizens of the Country of Australia, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

11. Venue is proper in the Tampa Division of the Middle District of Florida pursuant to 28 U.S.C. § 1391(b).  On information and belief, Defendants reside in this judicial district.  Further, a substantial part of the events or omissions giving rise to the claims occurred within this judicial district; and Defendants are all subject to personal jurisdiction in this judicial district.

12. This Court has personal jurisdiction over Defendants since they transact business within this State and have an office in this State; have committed tortious acts or omissions within this State; regularly do or solicit business, or engage in

4

other persistent courses of conduct, or derive substantial revenue from goods, purchased, used or consumed or services rendered in this State. The activities of Defendants within this State are substantial and not isolated.  In addition, this action arises out of transactions and operations connected with and incidental to Defendants' business within this State.

13. Among other things, Defendants operate their business in this State, have made continuous and ongoing misrepresentations to and omitted material facts from Plaintiffs (and other investors) from this State, have regularly and repeatedly exchanged communications with Plaintiffs (and other investors) from this State, received payments from Plaintiffs (and other investors) in this State, and met with Plaintiffs (and other investors) in this State.  Further, Defendants conspired with each other in this State, and a substantial portion of the acts in furtherance of their conspiracy took place in this State.

## FACTUAL BACKGROUND

14. Plaintiffs were introduced to the Holcombs through a mutual acquaintance in 2014.   At the time, Plaintiffs were advised that the Holcombs were seeking to raise funds through an entity called Redemptech Supporters, LP ("Redemptech"), which was a limited partnership formed under the laws of New Zealand.

15. The Holcombs claimed to intend to use the funds raised to bring to market Robert Holcomb's new invention:  a High Efficiency Generator ("HEG") that supposedly produced non-nuclear atomic energy.

16. The Holcombs represented that the success of the HEG had been independently verified and that they were currently working on commercial units for sale.

17. In January 2014, the Holcombs arranged for Bureau Veritas North America, Inc., a US based testing and certification company, to prepare an Advisory Service Report (the "Veritas Report") for the Holcombs to use to market to prospective Redemptech investors regarding the HEG.

18. The Holcombs used the Veritas Report to fool prospective investors into believing that the HEG worked for the purpose of inducing Plaintiffs (and other investors) to give more money to the Holcombs.

19. After visiting the Redemptech facility in New Zealand and being assured by the Holcombs that the Veritas Report proved that the invention did work, Plaintiffs decided to invest.

20. Specifically, in March 2014, Plaintiff Elizabeth Robinson, on behalf of Tukibek Superannuation Fund, purchased $200,000 worth of partnership interest of Redemptech.  At the same time, Plaintiff Roger Down, on behalf of RHL Down

Superannuation Fund, purchased $100,000 worth of partnership interest in Redemptech.

21. On information and belief, the Holcombs did not use the funds solicited from Plaintiffs (or other investors) to bring the HEG to market.  Instead, the Holcombs used investor funds to finance a lavish lifestyle.

22. From 2014 to 2017, the Holcombs continued to falsely tout the success of their HEG.

23. On May 5, 2017, Defendants' counsel from New Zealand, Peter Webb of the firm Denham Bramwell, advised that Robert Holcomb was canceling his contract with Redemptech and had "established a new structure to own the technology and a new investment platform for investors."

24. Mr. Webb further advised:  "We consider it is in the best interests of limited partners who have paid cash to purchase their partnership interest in [Redemptech] to accept Dr. Holcomb's proposal of shares in Holcomb Energy LLC equivalent to their partnership interest in Redemptech."

25. Mr. Webb attached a letter from Robert Holcomb, in which Robert Holcomb advised that he had severed ties with Redemptech and that all legitimate investors in Redemptech "have been granted the same mirror-image ownership interest in this new entity, [Defendant] Holcomb Power, LLC."  Robert Holcomb further advised that Holcomb Power was a "US Delaware-based investment entity."

7

26. Eventually, the HEG came to be known as the Holcomb Energy System ("HES"), and the Holcombs maintained that the HES was a groundbreaking power generation technology that made 100% clean, electric power available and affordable in every application where energy was required.

27. The HES supposedly includes three separate but related products: an Inline Power Generator ("ILPG"), a Self-Sustaining Power Generator ("SSPG"), and a Phase Converter. Defendants misrepresented the efficacy of all three products.

28. In fact, to this day, Defendants falsely state the following about the ILPG on their website:

> Capable of magnifying true electric power from any source to multiple times the power input. Previously, the voltage could be magnified or transformed. But never before has a technology existed to magnify true electric power by magnifying amperage. The ILPG has unlimited applications, including magnifying the power output from the grid and renewables, like wind and solar installations. It can increase the usable true power for any use or any facility including homes, apartments, factories, office buildings – or any consumer of electric power, reducing one's power bill, and carbon footprint, by up to 80%.

*See* https://holcombenergysystems.com/technology-breakthrough/.

29. Defendants falsely state the following about the SSPG:

> Operating independently of any outside power source, the HES stand-alone power generation system operates in a self-looping, self-regenerating fashion, powering itself while simultaneously powering any size electric load. This system is scalable everywhere electricity is needed, including residential and commercial applications, transportation, consumer electronics, and along the power grid.

*See* https://holcombenergysystems.com/technology-breakthrough/.

30. Similarly, Defendants falsely state the following about the Phase

Converter:

> Meets the worldwide demand for clean, point of use three-phase electric power while simultaneously magnifying power output. Three-phase electric power availability continues to be a worldwide issue because of the time, logistics, materials, and expense incurred by electric power companies to expand three-phase power where only single-phase and split-phase power exists. New transmission lines must be installed in order to deliver three-phase power. Three-phase electric power is needed to run most industrial equipment. Existing phase converter technologies carry significant drawbacks including poor power quality, limited size availability, and unwanted line harmonic distortion. The HES Phase Converter is a simple phase converter system that is solid-state and tuneable without computers, rectifiers, or inverters. In addition to using no fuel, this system is inexpensive, reliable, and boosts power output by upwards of 500%.

*See* https://holcombenergysystems.com/technology-breakthrough/.

31. On April 11, 2018, Defendants' counsel from New Zealand, Peter Webb of

the firm Denham Bramwell, advised that 70% of the investors in Redemptech had

accepted Defendants' offer to replace Redemptech shares with an equivalent value

of Holcomb Power shares.

32. That same month, Plaintiffs Down and Robinson accepted Robert

Holcomb's offer of shares of Holcomb Power equivalent to the interest held in

Redemptech.

9

33. On September 6, 2018, Defendants issued certificates of Economic Ownership Interests in Holcomb Power, LLC to the RHL Down Superannuation Fund (0.1% interest) and the Tukibek Superannuation Fund (0.2% interest).  The certificates reflected that RHL Down Superannuation Fund and the Tukibek Superannuation Fund had purchased Economic Interests of Holcomb Power at a $100 million valuation.

34. On September 25, 2018, the Holcombs sent a letter to Holcomb Power investors claiming that they "are incredibly proud to report that the solid-state Holcomb Energy System is now running itself continuously in a self-looping fashion for hours at a time, powering itself and feeding power to a significant load, with no input from the grid."

35. On information and belief, this representation, and several similar ones, were false and were made for the purpose of inducing Plaintiffs (and other investors) to give more money to the Holcombs.

36. The Holcombs further advised that they were currently seeking a $10 million raise, with an immediate goal of $4 million.  They claimed that until October 3, 2018, they will allow existing investors to purchase Economic Interests at $2.2 million for 1% interest [*i.e.*, at a $220 million valuation] but that new investors will pay $3 million for 1% interest [*i.e.*, a $300 million valuation] as a result of "this self-looping accomplishment."

37. In November 2019, the Holcombs arranged for DNV-GL, a testing and certification company, to prepare a Verification Statement (the "DNV Report") for the Holcombs to use to market to prospective investors regarding Economic Interests in Holcomb Power, LLC.

38. In October 2021, Defendants falsely told the following to investors:

> We now offer three separate technologies, all part of the Holcomb Energy System and **ready for market**:  the HES In-Line Power Generator, which takes power from any source, whether the grid or renewables, and magnifies the power output by more than 200%, effectively cutting one's power bill, and carbon footprint, by greater than half; the HES Phase Converter, which converts single or split-phase power into much more efficient three-phase power and also magnifies power output by more than 200%; and of course the HES stand-alone, self-sustaining generator.

39. In 2021 and 2022, the Holcombs arranged for SGS North America, Inc., another testing and certification company, to prepare various reports (the "SGS Reports") for the Holcombs to use to market to prospective investors regarding Economic Interests in Holcomb Power, LLC.

40. The Holcombs used the DNV-GL and SGS Reports to fool prospective investors into believing that the HES worked for the purpose of inducing Plaintiffs (and other investors) to give even more money to the Holcombs.

41. On May 2, 2023, Robert Holcomb advised Plaintiff Down that he had "secured a large funding package from Breakthrough Energy Ventures."  Robert Holcomb further advised that Breakthrough Energy Ventures had been founded

by Bill Gates, and he claimed that "this package will allow us to launch manufacturing of the Holcomb Energy System for installation in 500,000 EV charging stations across the United States."

42. But Robert Holcomb advised Plaintiff Down that he needed $250,000 in immediate bridge funding for the purpose of patent maintenance and prosecution. He claimed that anyone who loaned money "will receive their pro-rata ownership in Holcomb Power LLC and the full monetary return of their investment."

43. On information and belief, the Holcombs' representations concerning Breakthrough Energy Ventures were false, and in fact, Breakthrough Ventures had never offered any sort of funding package to the Holcombs.  Rather, the Holcombs made these false representations for the purpose of inducing Plaintiffs (and other investors) to give more money to the Holcombs.

44. In a separate communication on May 2, 2023, the Holcombs advised investors that "there are two embodiments of the HES: 1.  The HES In-Line Power Generator, which takes power input from any source including jet fuel or diesel, and significantly magnifies power output.  2.  The HES Self-Sustaining Generator, which powers itself in a self-looping, self-regenerating fashion, while simultaneously powering any size load, thus removing the need for refill or a recharge."

12

45. The Holcombs further advised that "the claims of HES have been independently witness-verified by the top witness verification firms in the world, SGS and DNV-GL."

46. The Holcombs used these reports to induce Plaintiffs (and other investors) to give more money to the Holcombs.

47. Nevertheless, in reliance on the Holcombs' false and misleading representations, on May 5, 2023, Plaintiffs, through Timtash, issued a short-term loan of $50,000 to Holcomb Power, LLC for operating expenses by way of a wire transfer to Holcomb Power's bank account. The parties agreed that the funds would be returned to Timtash within 30 days. The parties also agreed that Timtash would receive $50,000 worth of Economic Ownership Interests in Holcomb Power, as well as this same amount (*i.e.*, $50,000) worth of stock in Astra Energy, Inc., a publicly traded company using the ticker symbol ASRE that had entered into a joint venture with Holcomb Energy Systems, LLC regarding the use of the HES technology.

48. On September 13, 2023, Plaintiff Down, through Timtash, issued another short-term loan of $50,000 to Holcomb Power, LLC for operation expenses by wire transfer to Holcomb Power's bank account. The parties agreed that the funds would be returned to Timtash within 30 days. The parties also agreed that Timtash would receive $50,000 worth of Economic Ownership Interests in Holcomb Power,

13

as well as this same amount (i.e., $50,000) worth of stock in Astra Energy, Inc., a publicly traded company using the ticker symbol ASRE.

49. On information and belief, Defendants did not use these loan proceeds for patent maintenance and protection.

50. These loans were not paid back within 30 days nor at any other time since then.  On information and belief, Plaintiffs also never received the $100,000 worth of Holcomb Power interests or $100,000 worth of Astra Energy stock either.

51. In addition, in September 2023, Plaintiff Down, through Timtash, loaned 85,000 euros to Defendants for intellectual property protection by making debit card payments directly to Defendants' European attorneys, FR Kelly.

52. Also in September 2023, Plaintiff Down, through Timtash, loaned $25,000 to Defendants for legal fees by making debit card payments directly to Defendants' US attorneys, the Patterson Intellectual Property Group.

53. Defendants assured Plaintiff Down that these short-term loans would be repaid within 30 days.

54. But as was the case with the other loans, no portion of these loans have been repaid by Defendants.

55. The Holcombs have confirmed these debts but have continually refused Plaintiffs' request for payment.

56. In addition, in the fall of 2023, Defendants contracted with Timtash for the use of Timtash's plane for HES-related business trips.  At the time, the Holcombs and Holcomb Energy Systems, LLC agreed to pay the costs of the plane (including but not limited to hangar costs, fuel, insurance costs, landing fees, and air/navigation charges).

57. Defendants owe Timtash in excess of $110,000 for these expenses.

58. Yet, despite repeated requests for payment of these expenses, Defendants have refused to pay.

59. In the first quarter of 2024, it became abundantly clear to Plaintiffs that Defendants had been perpetrating a fraud on them (and several other investors) over the course of many years.

60. On information and belief, Defendants have received tens of millions of dollars in investment funds and licensing fees from investors over the last several years; but rather than use those funds to generate any sort of returns for investors, Defendants have squandered those funds for their own personal benefit.

61. Multiple lawsuits have been recently filed against the Holcombs and/or their affiliated entities.  Litigants have alleged not only that the HES system does not significantly reduce energy costs, but also that it actually *increased* the cost of energy.

62. Former employees of the Defendants (particularly including Defendants' former lead engineer) have since advised that the HES does not work as represented by the Holcombs and have challenged many of the claims asserted by the Holcombs.

63. Defendants' landlord is currently seeking to evict them from their facility in Sarasota, Florida for failing to pay rent.

64. In March 2024, a creditor recorded a foreign judgment in the amount of $16 million against Robert Holcomb in Sarasota County, Florida relating to his misconduct in connection with a prior entity.

65. In addition, Plaintiffs recently learned that on December 7, 2023, the United States Patent and Trademark Office ("USPTO") rejected at least one of Robert Holcomb's patent applications, finding among other things that "the claimed invention is not supported by either a credible asserted utility or a well-established utility."  The USPTO also noted that "the claimed invention violates the first law of thermodynamics, which is also known as the principle of conservation of energy, stating that the internal energy of an isolated system remains constant."

66. Defendants continue to misrepresent to Plaintiffs (and other investors) the efficacy of their "inventions," their progress in bringing their products to market (and, therefore, generating returns for investors), and their actual and intended uses of the investment proceeds and loans.

67. Defendants' "inventions" do not reduce energy consumption; rather, they actually increase energy costs and consumption.

## Count One
### Fraud / Intentional Misrepresentation

68. Plaintiffs re-allege and incorporate all prior paragraphs as if fully set forth herein.

69. Defendants made numerous false or misleading statements about material facts and omitted material facts to cause Plaintiffs to pay money to the Defendants.

70. Indeed, Defendants misrepresented, among other things, the following:

    a. That the HEG worked as represented and that it was ready to go to market;

    b. That Defendants would use the investment proceeds to bring the HEG to market;

    c. That the Veritas Report proved that the HEG worked as represented;

    d. That the HES could power itself and feed power to a significant load with no input from the power grid;

    e. That Defendants had secured a large funding package from Bill Gates' fund, Breakthrough Energy Ventures;

    f. That the SGS and DNV-GL Reports proved that the HES worked as represented by the Defendants;

17

g. That Defendants would repay the short term loans for operating expenses extended by Plaintiffs within 30 days;

h. That Defendants would repay the loans extended by Plaintiffs for attorneys' fees and fundraising efforts on a short term basis;

i. That Defendants would pay the costs associated with the use of Plaintiffs' plane; and

j. Various ongoing false claims about the efficacy of Defendants' "inventions."

71. Defendants made these false representations intentionally and with the knowledge that they were false (or in complete disregard for the truth of the statements) at the time that they were made.

72. Defendants made these statements to induce Plaintiffs to pay money to Defendants.

73. Plaintiffs relied on these statements, and Plaintiffs never would have given any money to Defendants but for these misrepresentations.

74. As a direct and proximate result of Defendants' misrepresentations, Plaintiffs suffered damage.

75. WHEREFORE, Plaintiffs demand entry of judgment against Defendants for all damages suffered as a consequence of Defendants' intentional misrepresentations and fraud, as well as punitive damages, rescission of the

contracts at issue, prejudgment interest, costs, and such other and further relief the Court deems appropriate.

## Count Two
## <u>Fraud in the Inducement</u>

76. Plaintiffs re-allege and incorporate all prior paragraphs as if fully set forth herein.

77. Defendants made the misrepresentations set forth above for the purpose of fraudulently inducing Plaintiffs to enter into the investment contracts for Redemptech and later Holcomb Power, LLC and the loan contracts with Defendants.

78. Plaintiffs relied on these statements when agreeing to enter into these contracts, and Plaintiffs never would have entered into these contracts but for these misrepresentations.

79. As a direct and proximate result of Defendants' misrepresentations, Plaintiffs suffered damage.

80. WHEREFORE, Plaintiffs demand entry of judgment against Defendants for all damages suffered as a consequence of Defendants' fraudulent inducement, as well as punitive damages, rescission of the contracts at issue, prejudgment interest, costs, and such other and further relief the Court deems appropriate.

## Count Three
## <u>Negligent Misrepresentation</u>

3937751v4

81. Plaintiffs re-allege and incorporate all prior paragraphs as if fully set forth herein.

82. As set forth above, Defendants misrepresented several material facts to Plaintiffs to cause Plaintiffs to pay money to the Defendants in the form of investment proceeds, loans, and unreimbursed expenses.

83. To the extent that Defendants did not knowingly make these false representations (which is denied), Defendants made such statements without knowledge of their truth or falsity or at a time when Defendants should have known of the falsity of the statements.

84. Defendants made these statements to induce Plaintiffs to give money to Defendants.

85. Plaintiffs justifiably relied on these statements, and Plaintiffs never would have given any money to Defendants but for these misrepresentations.

86. As a direct and proximate result of Defendants' misrepresentations, Plaintiffs suffered damage.

87. WHEREFORE, Plaintiffs demand entry of judgment against Defendants for all damages suffered as a consequence of Defendants' negligent misrepresentations, as well as punitive damages, rescission of the contracts at issue, prejudgment interest, costs, and such other and further relief the Court deems appropriate.

**Count Four**
**Money Lent**

88. Plaintiffs re-allege and incorporate all prior paragraphs as if fully set forth herein.

89. As set forth above, Plaintiffs delivered certain funds to Defendants that were always intended to be short-term loans, and those loans have yet to be repaid.

90. These loans include:   two $50,000 30-day loans for operating expenses, 85,000 euros to for intellectual property protection, and $25,000 for U.S. legal fees.

91. As a direct and proximate result of Defendants failure to repay these loans, Plaintiffs suffered damage.

92. WHEREFORE, Plaintiffs demand entry of judgment against Defendants for all damages suffered as a consequence of Defendants' failure to repay the loans, prejudgment interest, costs, and such other and further relief the Court deems appropriate.

**Count Five**
**Breach of Contract**

93. Plaintiffs re-allege and incorporate all prior paragraphs as if fully set forth herein.

94. As set forth above, Plaintiffs entered into various contracts with Defendants, including investment contracts, loan contracts, and contracts for the use of Plaintiffs' plane.

21

95. Defendants have breached all of these contracts.

96. As to the investment contracts, Defendants failed to use investment proceeds for their intended purposes of bringing the inventions to market and generating investment returns.  Instead, Defendants used the money to fund their lavish lifestyle and failed to advise, at any time, that their "inventions" did not actually work.

97. As to the loan contracts, Defendants failed to pay back the loan proceeds at any time.

98. As to the contract for the use of Timtash's plane, Defendants have failed to pay any of the expenses associated with the use of the plane despite several requests to do so.

99. Throughout their contractual dealings with Plaintiffs, Defendants conspired to take money from Plaintiffs (and other investors), falsely represented the efficacy of their inventions, and never advised of any sort of problems or issues with their supposed inventions.

100.    Defendants also failed to comply with any reasonable standards of fair trade, fair competition and business ethics.

101.    On the contrary, Defendants' conduct constituted deceptive, misleading, illegal and unethical business practices and conduct.

102.     Defendants' conduct also breached its implied obligations of good faith and fair dealing.

103.     As a direct and proximate result of Defendants' breaches, Plaintiffs suffered damage.

104.     WHEREFORE, Plaintiffs demand entry of judgment against Defendants for all damages suffered as a consequence of Defendants' breaches, restitution, prejudgment interest, costs, and such other and further relief the Court deems appropriate.

### Count Six
### Unjust Enrichment

105.     Plaintiffs re-allege and incorporate all prior paragraphs as if fully set forth herein.

106.     Through the payment of funds in the form of investments, loans, and unreimbursed expenses, Plaintiffs have conferred a benefit on Defendants; and Defendants have knowledge of these payments.

107.     Defendants voluntarily accepted Plaintiffs' funds and have retained all benefits of those funds.

108.     Given that Defendants have defrauded Plaintiffs (as set forth above) and failed to abide by any of their agreements, it would be grossly inequitable for Defendants to retain these funds/benefits.

109.    To allow otherwise would violate good conscience and fundamental principles of justice or equity.

110.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiffs suffered damage.

111.    WHEREFORE, Plaintiffs demand entry of judgment against Defendants for all damages suffered as a consequence of Defendants' unjust enrichment, prejudgment interest, costs, and such other and further relief the Court deems appropriate.

## Count Seven
## <u>Civil Conspiracy</u>

112.    Plaintiffs re-allege and incorporate all prior paragraphs as if fully set forth herein.

113.    There was an express or implied agreement between or among Defendants to commit the intentional misconduct described herein, including Defendants' fraud and intentional misrepresentation.

114.    The fraud and intentional misrepresentation described herein originated from Mr. and Mrs. Holcomb. They made the above-described intentional misrepresentations and material omissions in order to generate Plaintiffs' reliance and "investments" and "loans" of money and were successful in their efforts.

115.     A substantial portion of the acts in furtherance of Defendants' conspiracy took place in Florida.  Among other things, Mr. and Mrs. Holcomb made misrepresentations in Florida, gave misleading demonstrations of their products in their Florida-based facilities, and received funds from Plaintiffs (and other investors) in Florida.

116.     Defendants Holcomb Power, LLC and Holcomb Energy Systems, LLC are imputed with their knowledge, because Mr. and Mrs. Holcomb served as officers or directors or managers of the same. Nevertheless, Defendants Holcomb Power, LLC and Holcomb Energy Systems, LLC participated in the fraud and intentional misrepresentation through false agreements and other communications intended to give an air of legitimacy to Mr. and Mrs. Holcomb's misrepresentations. Their continued participation constitutes tacit agreement and conspiracy.

117.     Defendants' conspiracy to commit fraud and intentional misrepresentation injured Plaintiffs as it caused them to lose all funds "invested" with or "loaned to" the Holcombs and their business ventures and other losses.

118.     WHEREFORE, Plaintiffs demand entry of judgment against Defendants for all damages suffered as a consequence of Defendants' civil conspiracy, as well as punitive damages, rescission of the contracts at issue,

25

prejudgment interest, costs, and such other and further relief the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all issues so triable.

Dated:  October 25, 2024.

Respectfully submitted,

*Thomas L. Young*
Thomas L. Young (FL Bar No. 231680)
**Law Office of Thomas L. Young, P.A.**
400 North Ashley Drive, Suite 1100
Tampa, Florida 33602
Telephone:  (813) 251-9706
Fax:  (813) 364-1908
Email:  tyoung@tlylaw.com

and

Stephen J. Herman, LA Bar No. 23129
(*pro hac vice* pending)
sherman@fishmanhaygood.com
Lance C. McCardle, LA Bar No. 29971
(*pro hac vice* pending)
lmccardle@fishmanhaygood.com
**FISHMAN HAYGOOD, LLP**
201 St. Charles Ave. Suite 4600
New Orleans, LA 70170
Phone: (504) 586-5252
Fax: (504) 586-5250

***Counsel for Plaintiffs***

3937751v4